**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | **1:18-cv-01916-WSD-JCF** |
| **v.** | : | |
| | : | **JURY TRIAL DEMAND** |
| **GEORGIA RETAIL COMPANY and** | : | |
| **GEORGIA THRIFT STORES, INC.** | : | |
| **(collectively d/b/a VALUE VILLAGE)** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**FIRST AMENDED COMPLAINT**

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on a disability, and to provide appropriate relief to Marjorie Clark ("Clark"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants Georgia Retail Company and/or Georgia Thrift Stores (collectively d/b/a Value Village) discriminated against Clark when they

denied her requests for reasonable accommodations under the ADA, which, in turn, led to her constructive discharge, in violation of the ADA, as amended.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     That upon information and belief, Defendant Georgia Retail Company, is a Georgia domestic profit corporation operating retail thrift stores with its primary place of business located at 6200 Ross Road, Atlanta, GA 30340.

5.      That upon information and belief, Defendant Georgia Thrift Stores, Inc., is a Georgia domestic profit corporation operating retail thrift stores with its primary place of business located at 6200 Ross Road, Atlanta, GA 30340.

6.     That upon information and belief, Defendants collectively and/or singularly conduct business and represent themselves to the public under the name "Value Village."

7.     That upon information and belief, Defendants were so integrated that they constitute a "single" or "integrated" employer for purposes of the ADA.

8.     That in this regard, Defendants have common management, interrelations between operations, centralized control of labor relations, and common ownership and financial control.

9.     That as such, at all relevant times, Defendants together have continuously been thrift store retailers doing business in the State of Georgia and the city of Atlanta, and have continuously maintained at least 15 employees.

10.    At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Section 101(5)

of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

11.     At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

12.     More than thirty days prior to the institution of this lawsuit, Marjorie Clark filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendants.

13.     On December 5, 2017, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14.     On January 30, 2018, Defendants advised the Commission that they did not wish to participate in the conciliation process.

15.     On February 7, 2018, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

16.   All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

17.   Since on or about January 2016, Defendants have engaged in unlawful employment practices at their Forest Park, Georgia retail store location in violation of Section 102 of the ADA, 42 U.S.C. §12112(a) and (b).

18.   Clark is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).  Clark suffers from Chronic Obstructive Pulmonary Disease ("COPD") and emphysema, both of which substantially limit her in major life activities, including the operations of the respiratory system.

19.   Clark began working for Defendants on October 10, 2006 as a Cashier.  She was later transferred to a Miscellaneous Stocker position.

20.   A few years after she began working for Defendants, Clark was diagnosed with COPD and emphysema.  Clark managed her conditions with medication and an inhaler.  She informed her manager at the time about her conditions.  Clark's manager approved her use of an inhaler at work and saw Clark use her inhaler on a few occasions.

21.     In 2015, Clark started using oxygen at home in the evenings but did not need it at work.

22.     Sometime in January 2016, Clark was assigned to work for a new manager.

23.     Around this same time, Clark began to have more difficulty breathing at work, and her doctor suggested that she start using oxygen at work.  She then requested that she be allowed to use her portable oxygen tank housed in a backpack while at work but was told by her manager that it was "not allowed."

24.     Beginning mid-summer 2016, Clark's condition worsened, and she started having more difficulty performing her job without the use of oxygen.  She, therefore, asked again about using her portable oxygen tank housed in a backpack while at work, but her request was denied.

25.     Clark complained to her family and friends that although she was having difficulty breathing at work and had requested to use oxygen, her manager continually denied her requests.

26.     Thereafter, Clark asked her manager on at least five occasions from September 2016 to April 2017, to use oxygen at work; each time, he denied her request and never asked for, nor requested that she provide a doctor's note.

27.     After being told "no" a few more times, Clark asked her manager why he continued to deny her request to use oxygen at work, to which he responded, "End of story" on one occasion and, "You already know the answer to that" on another occasion.

28.     Clark was surprised by her manager's continual denial of her requests because her manager would often see her struggling to breathe and would ask if she needed a break and tell her to "slow down" or would tell her that he "understood" because a close family member of his was suffering from the same condition.

29.     In September 2016, in addition to requesting permission to use oxygen at work, Clark also asked to be transferred to a less strenuous position, i.e., a Pricer/Tagger position because her breathing issues made the Miscellaneous Stocker position duties increasingly more difficult for her to perform.

30.     However, Clark's manager told her that the Pricer/Tagger position was not available.  Nevertheless, in November 2016, Defendants hired someone into the position.

31.     Thereafter, Clark continued to remind her manager that she was having difficulty breathing and wanted to transfer to the Pricer/Tagger position. However, Clark's manager denied her requests, telling her, "You can't always get

what you want.  I want to be president but that doesn't mean it is happening."

Clark's manager even suggested a few times that she retire because of her health.

32.     Clark's manager offered her the option of transferring to a Back-Up

Cashier position.   However, Clark and another employee, who worked in the

position, confirmed that the position offered by the manager was just as strenuous

as Clark's current position.  Therefore, she declined the manager's offer.

33.     Clark continued to request the transfer to the Pricer/Tagger position,

with  no  success.    Yet,  on  April  19,  2017,  Defendants  hired  yet  another

Pricer/Tagger, apparently not considering Clark.

34.     On May 4, 2017, Clark again requested permission to use her portable

oxygen tank at work.   After her manager denied her request once again, Clark

requested that the manager put the reasons for his denial in writing, but he refused

and directed her to, "call HR."

35.     Clark called Defendants' Human Resources representative on May 4,

2017;  May  15,  2017;  May  18,  2017;  and  May  22,  2017,  but  was  not  able  to

personally speak with the Human Resources representative but left voicemail

messages.  Clark's calls were never returned.

36.     Clark continued working as a Miscellaneous Stocker and continued to

have more and more difficulty breathing at work.

37.     On May 30, 2017, Clark was working but "didn't feel right" and could not catch her breath.  She left work and immediately went to the hospital.  When she arrived, the doctors informed her that she had suffered from a "subtle stroke," likely due to a temporary loss of oxygen to the brain.  To date, Clark suffers from some heaviness in her legs and an inability to manipulate small objects with her fingers.

38.     On June 5, 2017, Clark resigned from her employment with Defendants.  In her resignation letter, Clark cited Defendants' failure to allow her use of her oxygen tank and to transfer her to a less strenuous position, as well as management's recommendation that she retire due to her age and health as the reasons for her resignation.

39.     At the time of her resignation, Clark was able to perform the essential functions of her position with the accommodations that she requested but were denied by Defendants.

40.     Defendants' repeated denial of Clark's requests for accommodations related to her disabling conditions compromised her health to the point that Clark felt that she had no choice but to resign from her position with Defendants.

41.     The effect of the practice(s) complained of above has been to deprive Clark of equal employment opportunities and, otherwise, adversely affect her status as an employee because of her disability.

42.     The unlawful employment practices complained of above were intentional.

43.     The unlawful employment practices complained of above were done with malice or with reckless indifference to Clark's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all other persons in active concert or participation with it, from denying applicants and employees reasonable accommodations requested due to their disability status, and engaging in any other employment practices that discriminate on the basis of disability.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendants to make Clark whole by providing appropriate back pay with pre-judgment interest, front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

D.     Order Defendants to make Clark whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E.     Order Defendants to make Clark whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.     Order Defendants to pay punitive damages to Clark for its malicious and/or reckless conduct described above, in an amount to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its

Complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

s/Ottrell Ferrell-Edwards
Ottrell Ferrell-Edwards
Trial Attorney
Georgia Bar No. 141979
ottrell.edwards@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6812     (direct)
(404) 562-6905     (facsimile)